SILLS CUMMIS & GROSS P.C.
David I. Rosen, Esq.
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000
*Attorneys for Defendant*
*Tony Bowls*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

```
------------------------------------------------------- x
                                        :   Civil Action No. 3:14-cv-08107(MAS)(LHG)
MON CHERI BRIDALS, LLC,                 :
                                        :
                Plaintiff,              :
                                        :
        vs.                             :
                                        :
TONY BOWLS,                             :
                                        :
                Defendant.              :
                                        :
------------------------------------------------------- x
```

## DEFENDANT TONY BOWLS' MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A PRELIMINARY INJUNCTION

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102-5400
Telephone: 973-643-7000
Facsimile:  973-643-6500
drosen@sillscummis.com
*Attorneys for Defendant Tony Bowls*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND .................................... 3

    A.    Bowls, His International Reputation, and Federal and Common Law Trademarks ................................................................. 3

    B.    MCB, a Former Licensee of the TONY BOWLS Trademarks ............ 5

    C.    The Parties' 2011 Agreements ................................................. 5

    D.    Bowls' Termination of the License and Employment Agreements ...... 7

    E.    This Court's March 25, 2015, Ruling ....................................... 8

    F.    MCB's Refusal to Cease Use of the Tony Bowls Trademarks After the Court's March 25, 2015 Order ............................................. 9

LEGAL STANDARD FOR PRELIMINARY INJUNCTIONS IN TRADEMARK CASES ............................................................................................ 11

ARGUMENT ..................................................................................... 13

BOWLS IS ENTITLED TO A PRELIMINARY INJUNCTION PURSUANT TO THE LANHAM ACT BARRING MCB'S CONTINUED USE OF HIS TRADEMARKS ................................................................................ 13

    A.    Bowls Has Made a Sufficient Showing That Termination of the License Agreement Was Proper ............................................ 13

    B.    Bowls Has a Substantial Likelihood of Success on His Lanham Act Claims ............................................................................. 15

    C.    MCB's Conduct Has Irreparably Harmed, and Continues to, Irreparably Harm, Bowls ..................................................... 21

    D.    The Balance of Hardships Weighs Heavily in Bowls' Favor ........... 22

    E.    Issuing a Preliminary Injunction Serves the Public Interest .......... 24

CONCLUSION .................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  237 F.3d 198 (3d Cir. 2000)....................................................................17, 16

*Birthright v. Birthright Inc.*,
  827 F. Supp. 1114 (D.N.J. 1993) ..............................................................20

*Dunkin' Donuts Franchising, LLC v. Claudia I, LLC*,
  2014 U.S. Dist. LEXIS 149347 (E.D. Pa. Oct. 20, 2014).......................18

*Howard v. Laws*,
  2014 U.S. Dist. LEXIS 111092 (D.N.J. Aug. 12, 2014).........................20

*Interspace Corp. v. Lapp, Inc.*,
  721 F.2d 460 (3d Cir. 1983)................................................................17, 18

*ITT Industries, Inc. v. Wastecorp, Inc.*,
  87 F. App'x. 287 (3d Cir. 2004) ...............................................................24

*Kos Pharms., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004)......................................................................16

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
  543 U.S. 111 (2004)...................................................................................16

*Liquid Glass Enters. v. Dr. Ing. h.c.F. Porsche AG*,
  8 F. Supp. 2d 398 (D.N.J. 1998) ..............................................................24

*Mister Softee, Inc. v. Amanollahi*,
  2014 U.S. Dist. LEXIS 90370 (D.N.J. July 1, 2014)..............................19

*Opticians Assn. of Am. v. Indep. Contractors of Am.*, *supra* at 192 .............16

*Opticians Ass'n of Am. v. Independent Opticians of Am.*, *supra* at 195 (3d Cir. 1990) ...............17

*Opticians Ass'n of America v. Independent Opticians of America*, *supra* at 197 (3d Cir.
  1990) ..........................................................................................................23

*Otiogiakhi v. AAMCO Transmissions, Inc.*,
  2011 U.S. Dist. LEXIS 132601 (D.N.J. Nov. 17, 2011)....................15, 23

*Pennzoil-Quaker State Co. v. Smith*,
  2008 U.S. Dist. LEXIS 124298 (W.D. Pa. Mar. 7, 2008) .......................20

*Ramada Worldwide, Inc. v. RIP Mgmt. Group Corp.*,
    2009 U.S. Dist. LEXIS 53808 (D.N.J. June 25, 2009) ..............................................18

*S & R Corp. v. Jiffy Lube Int'l, Inc.*,
    968 F.2d 371 (3d Cir. 1992)..................................................................... passim

*Sabinsa Corp. v. Creative Compounds, LLC*,
    609 F. 3d 175 (3d Cir. 2010)..............................................................................19

*Unicasa Mktg. Group, LLC v. Martha Spinelli*,
    2007 U.S. Dist. LEXIS 16628 (D.N.J. Mar. 7, 2007) ...........................................18

*Villanova Univ. v. Villanova Alumni Educ. Found.*,
    123 F. Supp. 2d 293 (E.D. Pa. 2000) ..............................................................22, 23

*Wyndham Hotels & Resorts, LLC v. Northstar Mt. Olive, LLC*,
    2013 U.S. Dist. LEXIS 44468 (D.N.J. Mar. 28, 2013)......................................15, 21

## FEDERAL STATUTES

15 U.S.C. §§ 1114 ("Section 32")................................................................................16

15 U.S.C. § 1115 .........................................................................................................18

15 U.S.C. § 1125 .........................................................................................................20

## OTHER AUTHORITIES

Unfair Competition, § 30:48 .......................................................................................13

2625069 v5

.
## PRELIMINARY STATEMENT

Defendant Tony Bowls ("Bowls") has been compelled to file this Motion for a Preliminary Injunction against Plaintiff Mon Cheri Bridals, LLC ("MCB"), because MCB willfully and brazenly has refused to stop using the TONY BOWLS trademarks and continues to hold itself out as an authorized licensee of the TONY BOWLS brands of women's formalwear, even though MCB no longer has Bowls' authorization to use his licensed marks. This Memorandum of Law is submitted in support of Bowls' motion.

Bowls is a world-renowned designer of women's evening dresses and social occasion dresses, and the creator and designer of his namesake dress line TONY BOWLS and other TONY BOWLS brands (such as TONY BOWLS PARIS, TONY BOWLS LE GALA, TONY BOWLS EVENING, TONY BOWLS COLLECTION, TONY BOWLS SHORTS, TONY BOWLS BRIDAL, TONY BOWLS JUNIORS and TONI XOXO BY TONY BOWLS). Bowls has designed countless TONY BOWLS-branded gowns for beauty pageant contestants worldwide, including winners and finalists of the internationally famous Miss America, Miss USA and Miss Universe pageants. Many celebrities choose TONY BOWLS-brand gowns for red carpet appearances, and his gowns are regularly featured on a variety of top television shows and movies.

MCB is a former TONY BOWLS-brand licensee. MCB was formerly licensed to use the trademark TONY BOWLS and other TONY BOWLS-formative marks in the manufacture, distribution, marketing, promotion and sale of prom, evening, pageant and wedding dresses, by reason of the License Agreement between Bowls and MCB. MCB was also licensed to use certain aspects of Bowls' right of publicity to promote the TONY BOWLS brands of licensed dresses.

On November 10, 2014, Bowls terminated the parties' License Agreement.   The termination was based on MCB's multiple material breaches of the License Agreement, but premised principally on MCB's marketing of prom dresses without using the TONY BOWLS trademarks; the License Agreement plainly stated that Bowls, on 30 days prior written notice, could terminate it based on various enumerated material breaches, without an opportunity for MCB to cure.   Instead of honoring Bowls' termination of the License Agreement, MCB continued to use Bowls' trademarks without his permission and commenced the pending action.

On March 25, 2015, this Court denied MCB's preliminary injunction motion and dissolved a previously issued temporary restraining order barring Bowls from taking further steps to terminate the License Agreement, holding, in part, that MCB was unlikely to prevail on the merits of its claim that Bowls' termination of the License Agreement was improper.   On March 26, 2015, counsel for Bowls sent a "Cease and Desist" letter to MCB, which stated, in relevant part, that by reason of this Court's ruling of March 25,

> "MCB neither has the legal right, nor Bowls' authorization, to continue using Bowls' name or licensed mark with respect to any of its marketing or sales activities.   Such continued use not only violates the express terms of the terminated License Agreement, but is a violation of the Lanham Act."

Bowls' attorney demanded in that letter "that MCB immediately cease and desist from its continued use of Mr. Bowls' name or licensed mark in any capacity, that it immediately remove from its website and from all social media sites Mr. Bowls' name and licensed mark, and that it transfer to Mr. Bowls the domain name, ***tonybowls.com***."

Despite this Court's March 25 order and despite Bowls' direction to MCB to cease all use of the TONY BOWLS trademarks, MCB refuses to honor its statutory and contractual obligations and is blatantly infringing the TONY BOWLS trademarks.   MCB has flagrantly continued to use the marks and is misrepresenting itself to the public as the exclusive source of

TONY BOWLS-branded dresses.  MCB continues to use the TONY BOWLS trademarks as if it were still an authorized licensee, conducting business in direct competition with Bowls, preventing Bowls from launching new eveningwear under his trademarks and personal name, and compromising Bowls' right to successfully enter into new licensee relationships.

For the reasons that follow, as well as for the reasons set forth in the Certification of Tony Bowls in Support of Bowls' Motion For Preliminary Injunction ("Bowls Cert"), as well as the respective certifications of Joanne Sapp, Paige Burcham Dennis, Joseph Bohac and Dalia Kasmikha (collectively, the "Retail Store Owner Certifications"), Bowls respectfully asks this Court to grant Bowls immediate, emergency relief by enjoining MCB from (i) its continued use of Bowls' name or Bowls' registered and common law TONY BOWLS trademarks (collectively, the "TONY BOWLS Trademarks") in any capacity; (ii) making, or causing to be made, or disseminated any statement (including, but not limited to, vendors, retailers, customers, media or the general public), whether such statement is made verbally or in writing, that MCB remains authorized to manufacture, market, distribute, promote and/or sell any lines of dresses using Bowls' licensed mark; (iii) directing that MCB immediately remove from its website and from all social media sites Bowls' name and the TONY BOWLS Trademarks; (iv) transfer to Bowls the domain name, TonyBowls.com; and (v) granting such other relief as the Court deems just and appropriate under the circumstances.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     Bowls, His International Reputation, and Federal and Common Law Trademarks

Bowls is an internationally recognized fashion designer with a legendary career spanning more than 25 years.  (Certification of Tony Bowls in Support of Bowls' Mot. For Prelim. Injunct. ("Bowls Cert.") ¶ 3).  Bowls designs prom, social occasion, pageant, bridal and tuxedo fashions

under his namesake TONY BOWLS brand and other TONY BOWLS-formative trademarks, such as TONY BOWLS PARIS, TONY BOWLS LE GALA, TONY BOWLS EVENING, TONY BOWLS COLLECTION, TONY BOWLS SHORTS, TONY BOWLS BRIDAL and TONY BOWLS JUNIORS (collectively, the "TONY BOWLS Trademarks").  (*Id.* ¶ 4).   For many years, Bowls has used the TONY BOWLS Trademarks and his personal name, TONY BOWLS, to offer prom, social occasion, pageant, bridal and tuxedo fashions.  (*Id.* ¶ 5).  Multiple lines of women's formalwear are offered under the TONY BOWLS Trademarks throughout the United States and in dozens of foreign countries.  (*Id.*).

Bowls has developed an international reputation for his unique and stylish collections, and has won numerous fashion industry awards for his work, such as multiple wins of the DEBI (Distinctive Excellence in the Bridal Industry) award for "Prom Designer of the Year."  (*Id.* ¶ 6). TONY BOWLS-brand evening gowns have been worn by countless contestants in beauty and talent pageants worldwide, including winners and finalists of the internationally famous Miss America, Miss USA, Miss Teen USA and Miss Universe pageants. (*Id.* ¶ 7). 8.   From    April 2014 through March 2015, Bowls was the Official Evening Gown Designer for the Miss America pageant and dressed all 51 contestants in that pageant in TONY BOWLS-brand gowns. (*Id.* ¶ 8).  Bowls has also served as the official designer for the Mrs. America pageant as well as the official designer for Miss America's Outstanding Teen pageant.  (*Id.* ¶ 9).   In addition to being featured on internationally televised pageants, gowns from TONY BOWLS lines are frequently chosen by celebrities for red carpet appearances and have been widely featured on high profile television shows such as American Idol, Dancing With the Stars, The Bachelor, The Ellen DeGeneres Show, the Real Housewives franchise and The Price Is Right.  (*Id.* ¶ 10).

Based on many years of widespread and continuous use of the TONY BOWLS Trademarks, millions of dollars of sales of TONY BOWLS-branded formalwear, extensive unsolicited media coverage of Bowls and the TONY BOWLS brands, and substantial marketing and promotion of formalwear under the TONY BOWLS Trademarks, Bowls has developed extensive common law rights in the TONY BOWLS Trademarks. (*Id.* ¶ 11). In addition, Bowls owns two federal trademark registrations for the mark: TONY BOWLS, U.S. Reg. No. 3557188 (for "clothing, namely, gowns, dresses, shoes, gloves, hosiery, undergarments, hats and veils) and U.S. Reg. No. 4464591 (for "formal wear, namely, tuxedos, and tuxedo related accessories, namely, ties, shirts, cumberbuns [sic], vests, tuxedo shoes and shirt[sic]." (Bowls. Cert. ¶ 12, Ex. 71 to Bowls Cert.).

**B.     MCB, a Former Licensee of the TONY BOWLS Trademarks**

MBC is a manufacturer and wholesaler of wedding dresses and social occasion wear. (*See* Plaintiff's First Amen. Compl., filed April 6, 2015, Dkt. No. 32, p. 2). MCB offers for sale wedding dresses and social occasion wear under its own house brands, as well as under the trademarks of particular designers. (Bowls Cert. ¶ 13). MCB operates a corporate website at the domain name ***moncheribridals.com***, which advertises the brands of dresses that it offers for sale. (Bowls Cert. ¶ 14).

**C.     The Parties' 2011 Agreements**

**1.     The License Agreement**

The License Agreement granted MCB an exclusive, worldwide license to use the TONY BOWLS Trademarks and Bowls' personal name, and other TONY BOWLS-formative marks such as TONY BOWLS PARIS, TONY BOWLS LE GALA, TONY BOWLS EVENING, TONY BOWLS COLLECTION, TONY BOWLS SHORTS, TONY BOWLS BRIDAL and TONY BOWLS JUNIORS, in connection with the manufacture, distribution, marketing,

promotion and sale of prom, junior prom, pageant, evening and wedding dresses, in exchange for the payment of certain royalties to Bowls.  (License Agreement, Ex. 72 to Bowls Cert., § 2.1).

### 2.    The Employment Agreement

Contemporaneously with the License Agreement, the parties entered into the Employment Agreement, whereby Bowls was employed by MCB to design the dresses to be sold under the TONY BOWLS Trademarks and other TONY BOWLS brands, and promote and publicize the dresses and the TONY BOWLS brands  (Employment Agreement, Ex. 73 to Bowls Cert., Sections 1.A., 1.C.).    To promote the TONY BOWLS brands and highlight Bowls' position as the designer of the brands, through the Employment Agreement, MCB was granted a limited license to use Bowls' image, likeness, photograph, name, signature and certain biographical information (Bowls' "Personal Elements") for purposes of marketing and promoting the dresses, Bowls and the TONY BOWLS Trademarks for the term of the Employment Agreement.  (*Id.* at Section 6.A).   MCB's license to use Bowls' Personal Elements was subject to Bowls' prior approval.  (*Id.* at Section 6B).

### 3.    Terms of the Agreements and MCB's Obligations Upon Expiration or Termination

Both Agreements imposed certain requirements upon MCB following their expiration or other termination.

Section 7.5 of the License Agreement provided that upon its expiration or termination, "all of MCB's rights in and to the Licensed Marks under this Agreement will terminate and revert to Bowls. . . ."  (Ex. 72 to Bowls Cert.).  MCB was also obligated to "provide adequate proof of its cessation of the use of the Licensed Marks."  (*Id.*)  MCB was permitted to continue using the TONY BOWLS Trademarks after expiration or termination for the limited purpose of selling off its "then existing inventory" of TONY BOWLS-branded dresses (including "work in

6

progress"), "until such inventory is fully liquidated." (*Id.*)   Further, MCB's license to use Bowls' Personal Elements ended upon the expiration or termination of the License Agreement, with no use permitted during any selloff period.  (Ex. 72 to Bowls Cert., § 6.C.).

**D.    Bowls' Termination of the License and Employment Agreements**

The Employment Agreement permitted Bowls to voluntarily resign from employment with MBC if he desired, by written notice to MCB.  (Ex. 73 to Bowls Cert., § 10.A.2.).  Bowls exercised this option by letter to MCB dated September 16, 2014.  Thereafter on October 10, 2014, Bowls sent MCB written notice that he was terminating the License Agreement, effective in 30 days, due to several identified material breaches by MCB.  (Ex. 74 to Bowls Cert., October 10, 2014, letter from R. Fitzgibbon to R. Stark)  Those breaches included, for example:

- marketing prom and pageant dresses in a manner that reduced the value of the TONY BOWLS Trademarks;

- marketing prom and pageant dresses without using the TONY BOWLS Trademarks;

- failing to provide appropriate trademark and proprietary notices regarding the TONY BOWLS Trademarks in marketing materials;

- marketing dresses for prom and pageant that are from designers other than TONY BOWLS;

- failing to pay all royalty payments when due;

- failing to provide sales reports to Bowls as required by the License Agreement;

- failing to provide appropriate marketing support for the TONY BOWLS Trademarks;

- failing to use third party Royalty funds for marketing of the TONY BOWLS Trademarks;

- failing to provide proper notice of infringement of the TONY BOWLS Trademarks; and

- failing to allow Bowls the opportunity to defend against the infringement of his TONY BOWLS Trademarks.  (Ex. 74 to Bowls Cert.)

Section 7.3 of the License Agreement permitted Bowls to terminate that agreement, upon 30 days written notice to MCB, for certain breaches by MCB that the parties agreed were "material to the Agreement." (Bowls Cert. Ex. 72). Of particular relevance to the instant motion, Section 7.3(b)(v) specified that if "MCB markets prom or pageant dresses in ***any manner*** not using the Licensed Marks," such conduct would be a material breach. (*Id.*) (emphasis added). Bowls previously-filed Certifications in this case detailed MCB's marketing of dresses designed by Bowls without using the TONY BOWLS Trademarks. (*See* Bowls Certification in support of its Opposition to Plaintiff's Motion for Preliminary Injunction ¶¶ 37-38, 43, 46, 51, 61, Dkt. No. 10; Bowls Supplemental Certification in support of its Supplemental Brief in Further Opposition to Plaintiff's Motion for Preliminary Injunction, Dkt. No. 20-4, Ex. 17).

**E.    This Court's March 25, 2015, Ruling**

On March 25, 2015, this Court denied MCB's requested preliminary injunction and dissolved the temporary restraining order, finding that MCB failed to show a likelihood of success on the merits of its breach of contract claims. (*See* Dkt. No. 31, 2015 U.S. Dist. LEXIS 37554 (D.N.J. Mar. 25, 2015).) Specifically, the Court held that Section 7.3(d) of the License Agreement permitted Bowls to terminate the Agreement in the event that "MCB markets prom of pageant dresses in any manner not using the Licensed Marks," and that Bowls had presented evidence "tending to show that MCB did indeed market prom dresses without using the Licensed Mark." (*Id.*). The Court found that MCB had not disputed that it has posted images of Bowls' dresses without using the TONY BOWLS Trademarks as required by the License Agreement, or disputed that the particular uses Bowls complained of constituted marketing. (*Id.*).

8

**F.      MCB's Refusal to Cease Use of the TONY BOWLS Trademarks After the Court's March 25, 2015 Order**

The day after the Court issued its order denying MCB's motion for preliminary injunction, counsel for Bowls sent written correspondence to MCB's attorney, reminding MCB of his October 10, 2014 letter terminating the parties' License Agreement and informing MCB that it had no right or authorization to continue its use of Bowls' name or the TONY BOWLS Trademarks.  (Ex. 91 to the Certification of David I. Rosen in Support of Bowls' Mot. For Prelim. Injunct. "Rosen Cert.").  Bowls directed MCB to immediately cease and desist from using his personal name and the TONY BOWLS Trademarks in any capacity, remove from its website and all social media websites Mr. Bowls' name and the TONY BOWLS Trademarks, and transfer to Bowls the domain name tonybowls.com.  (*Id.*).

MCB responded to Bowls by letter dated March 30, 2015, disputing that MCB had no right to continue its use of the TONY BOWLS Trademarks and refusing to cease its use of the marks.  (Ex. 92 to Rosen Cert.).  MCB also stated that it intended to continue using the TONY BOWLS Trademarks "until the Court has made a final determination on the propriety of Mr. Bowls' October 2014 termination notice."  (*Id.*).  Further, MCB threatened to seek "damages, and perhaps other relief" against Bowls for Bowls' alleged communications to others that due to the Court's March 25, 2015 Order, he is now free to use the TONY BOWLS Trademarks as he desires.  (*Id.*).

To date, MCB has failed to cease its use of the TONY BOWLS Trademarks.

**G.      MCB's Continued Unauthorized Use of the TONY BOWLS Trademarks in the Domain Name *tonybowls.com*, and of the TONY BOWLS Trademarks, Bowls' Image and Bowls' Biography on the Associated Website**

MCB continues to maintain ownership and control of the domain name ***tonybowls.com***, and the associated website which advertises formalwear under the TONY BOWLS Trademarks

9

as originating from MCB.  (*See* Ex. 76 to Bowls Cert., a Whois Record for ***tonybowls.com***).  The website at ***tonybowls.com*** also continues to display a page titled, "About Tony," which displays a very large photograph of Tony along with brief biographical information about him.  (*See* Bowls Cert. ¶ 22, Ex. 77).   That page also references the trademarks TONY BOWLS COLLECTION, TONY BOWLS PARIS, TONY BOWLS LE GALA, TONY BOWLS EVENINGS, TONY BOWLS SHORTS and TONY BOWLS LIMITED.  (*Id.*).  Further, the website invites Internet users to contact Tony, stating: "Tony wants to help make your search for the perfect dress seamless and stress-free. . . . Send an email to one of the addresses below and your question will be answered as quickly as possible.  Tony loves to get feedback from his customers and always welcomes pictures!"  (Ex. 77 to Bowls Cert.).  The contact information provided on that page, however is for MCB, not Bowls.  Bowls does not receive any communications that are sent or directed to the contact information displayed on that page.  (Bowls Cert. ¶ 22)  Bowls has not authorized such continued uses of the TONY BOWLS Trademarks or his image and biographical information.  (Bowls Cert. ¶ 22).  Such use is confusing and appears to be intentionally deceptive, and is confirmed by the Retail Store Owner Certifications.

For example, an MCB sales representatives informed a retail store owner that Bowls "needed a break" from MCB.  (Sapp Cert. at ¶ 8, Ex A.).   An assistant at MCB informed another retail store owner that Bowls no longer is with MCB, but that if that retailor wanted to order a TONY BOWLS pageant dress then the retailor <u>must</u> order the dress directly from MCB, (*See* Kasmikha Cert. at ¶ 6; *see also* Dennis at ¶¶ 6-7).  In addition to providing misinformation regarding Bowls' status/relationship with MCB and the ability to purchase TONY BOWLS dresses from avenues other than MCB, other retailers have not received any information

regarding Bowls' separation from MBC and have explained that "the relationship of the designer and the distributor is vital to" the retailer's decision as a purchaser. (Bohac Cert. at ¶ 9).

**H.    MCB's Continued Unauthorized Use of the TONY BOWLS Trademarks and Bowls' Image and Biography On MCB's Corporate Website, *moncheribridals.com***

Similarly, MCB is continuing to represent Bowls on MCB's corporate website at the domain name ***moncheribridals.com*** as a designer for MCB. (Bowls. Cert. ¶ 20, Ex. 75). The webpage located at http://moncheribridals.com/designers/tony/ displays a number of the TONY BOWLS Trademarks, as well as a photograph and detailed biography of Bowls. (*Id.*) Bowls has not authorized such continued uses of the TONY BOWLS Trademarks or his image and biographical information. (Bowls Cert. ¶ 20). MCB is also using the TONY BOWLS Trademarks, without Bowls' authorization, on various of its social media accounts, such as Facebook, Twitter and Instagram. (*See e.g.* Bowls Cert., ¶¶ 22-31; Exs. 78-83 to Bowls Cert.).

## LEGAL STANDARD FOR PRELIMINARY INJUNCTIONS IN TRADEMARK CASES

Federal trademark law expressly permits injunctive relief to prevent the violation of any right of the owner of a federally registered trademark, and/or to prevent a violation under the federal unfair competition statute, Section 1125(a) of the Lanham Act. 15 U.S.C. § 1116(a). Proof of ownership of a valid mark and likelihood of confusion generally entitles a trademark owner to injunctive relief. *Interpace Corporation v. Lapp, Inc.* 721 F.2d 460, 462 (3d Cir. 1983).

Injunctive relief is the remedy of choice for trademark and unfair competition cases, because there is no adequate remedy at law for the injury caused by an infringer's continuing infringement and the threat of future infringement. *See Coach, Inc. v. Bags & Accessories*, 2011 U.S. Dist. LEXIS 52767 (D.N.J. May 17, 2011) (reasoning, in the context of a permanent injunction, that "[w]hile a remedy at law would provide a degree of monetary relief," it would

not "compensate for the injury" to the trademark owner's "reputation or necessarily prevent future trademark infringement"); *citing Louis Vuitton Malletier, S.A. v. Mosseri*, 2009 U.S. Dist. LEXIS 100851 **14-16 (D.N.J. Oct. 28, 2009).  Additionally, there is a "compelling need" for preliminary injunctive relief in cases involving unauthorized trademark use by a former licensee after the license has been terminated, because in such circumstances "there is an increased danger that consumers will be confused and believe that the former [licensee] is still an authorized representative of the trademark holder."  *Opticians Association of America v. Independent Opticians of America*, 920 F.2d 187, 195 (3d Cir. 1990).

For a trademark owner to obtain a preliminary injunction, it must establish:

1.      a likelihood of success on the merits;

2.      that it will suffer irreparable harm if the injunction is denied;

3.      that granting preliminary relief will not result in even greater harm to the non-moving party; and

4.      that the public interest favors such relief.

*See Pappan Enters. v. Hardee's Food Sys.*, 143 F.3d 800, 803 (3d Cir. 1998) (reversing denial of preliminary injunction to trademark owner).

As shown below, Bowls fully satisfies the foregoing requirements.

## ARGUMENT

## BOWLS IS ENTITLED TO A PRELIMINARY INJUNCTION PURSUANT TO THE LANHAM ACT BARRING MCB'S CONTINUED USE OF HIS TRADEMARKS

### A.    Bowls Has Made a Sufficient Showing That Termination of the License Agreement Was Proper

Despite MCB's misguided claim that it may continue to use the TONY BOWLS Trademarks "until the Court has made a final determination on the propriety of Bowls' October 2014 termination notice" (Ex. 92 to Rosen Cert.), a trademark licensor is not estopped from obtaining a preliminary injunction against a holdover licensee merely because the parties dispute the propriety of the trademark owner's termination.

On the contrary, a trademark owner is entitled to preliminary injunctive relief against a holdover licensee's post-termination use of licensor's trademarks so long as licensor makes a "sufficient showing" that its termination of the license was proper. 5 McCarthy on Trademarks and Unfair Competition, § 30:48 (". . . the Third Circuit[ ] [has] held that a preliminary injunction hearing is not the place in which to fully litigate the merits of the propriety of the trademark owner's termination of a license or franchise. Rather, the trademark owner is entitled to a preliminary injunction if it can make a sufficient showing that its termination of the license was proper."); *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) (enjoining franchisee's post-termination use of the licensed trademarks despite franchisee's allegations that franchisor breached contract, explaining that "a franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor. The franchisor has the power to terminate the relationship where the terms of the franchise agreement are violated. Once a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act.")

Among other things, the License Agreement provided that Bowls had the right to terminate the License Agreement upon 30 days written notice, if "MCB markets prom or pageant dresses in *any manner* not using the Licensed Marks." (Ex. 72 to Bowls Cert.) (emphasis added). MCB has, on multiple occasions, marketed and advertised TONY BOWLS-brand dresses on social media outlets, such as in posts and re-post on Instagram showing photographs of TONY BOWLS-branded dresses without using the TONY BOWLS Trademarks. (*See e.g.* Bowls Cert. ¶ 25, 28, Ex. 82). MCB does not dispute that it has posted photographs of TONY BOWLS-branded dresses in marketing and advertising channels without using the TONY BOWLS Trademarks. (*See* this Court's March 25, 2015 opinion denying MCB's motion for preliminary injunction, Dkt. No. 30.) In his October 2014 termination letter, Bowls informed MCB specifically that he was terminating the License Agreement due to that particular material breach. (Ex. 74 to Bowls Cert.) These undisputed facts and the plain language of the  License Agreement easily establish a sufficient showing that Bowls' termination of the License Agreement was proper.

Accordingly, notwithstanding the pendency of MCB's breach of contract damage claims against Bowls, and MCB's contention that the License Agreement was improperly terminated, MCB is not entitled to continue using Bowls' TONY BOWLS Trademarks and continue reaping the benefits from the goodwill associated with those marks.

As the Third Circuit has explained, where a "[license] agreement gives the [licensor] the power to unilaterally terminate the agreement under certain conditions, and those conditions exist, pre-termination complaints are not relevant to infringement under the Lanham Act. Rather, pre-termination disputes affect the issue of damages." *S & R Corp. v. Jiffy Lube Int'l,*

*Inc.*, 968 F.2d 371, 377 (3d Cir. 1992) (reversing denial of preliminary injunction against holdover franchisee).[1]

**B.      Bowls Has a Substantial Likelihood of Success on His Lanham Act Claims**

The terms of the License Agreement are clear:  After the termination or expiration of the agreement, MCB was required to cease all use of the TONY BOWLS Trademarks, with the limited exception of using the marks to liquidate MCB's remaining inventory of TONY BOWLS-brand dresses.  (*See* Ex. 72 to Bowls Cert., License Agreement, § 7.5).  Moreover, MCB was required to provide Bowls with proof of its cessation of the use of the marks.  (*Id.*) Despite those requirements, MCB has brazenly continued to use the TONY BOWLS marks and present itself as the exclusive licensee of TONY BOWLS-branded apparel.  MCB unjustifiably has retained the domain name ***tonybowls.com*** and its associated website, advertising and offering for sale TONY BOWLS-branded dresses, and has retained the TONY BOWLS-brand section of its main website at the domain name ***moncheribridal.com***, which also advertises and offers for sale TONY BOWLS-branded dresses and misrepresents that Bowls currently is a designer for MCB.  Further, MCB is using the TONY BOWLS Trademarks on MCB's own "Mon Cheri Prom" social media accounts for its competing prom dresses, and representing that MCB is the

---

[1]     *See also Otiogiakhi v. AAMCO Transmissions, Inc.*, 2011 U.S. Dist. LEXIS 132601 (D.N.J. Nov. 17, 2011) (granting preliminary injunction against holdover licensee despite allegations of wrongful termination and licensor breach, explaining that "[franchisee's] claims of wrongful termination of the Franchise Agreement and contentions regarding the amount of money owed pursuant to the Agreement do not change the analysis, nor do they permit [franchisee] to continue in his unauthorized use of [franchisor's] mark. Rather, [franchisor's] right to terminate the Agreement exists independent of any claims [franchisee] may have against it."); *Wyndham Hotels & Resorts, LLC v. Northstar Mt. Olive, LLC*, 2013 U.S. Dist. LEXIS 44468 (D.N.J. Mar. 28, 2013) (despite former franchisors' allegations that Plaintiff did not fulfill its obligations under the parties' agreement prior to termination, court found that those circumstances did not absolve them from liability under the Lanham Act for post-termination use of franchisor's trademarks, *citing S & R Corp.*, 968 F.2d at 377). Accordingly, Bowls is entitled to a preliminary injunction prohibiting MCB from using the TONY BOWLS trademarks

"official prom manufacturer for Tony Bowls." Finally, it appears that MCB is actively seeking to deceive customers by using Bowls' likeness and stating he is a designer employed by MCB and may be contacted through the MCB-listed contact information (which is inaccurate).

The Lanham Act prohibits the unauthorized use of registered marks and the false designation of the origin of goods. 15 U.S.C. §§ 1114 ("Section 32"), 1125 ("Section 43"). Because MCB has intentionally used the TONY BOWLS Trademarks without authorization after the parties' License Agreement was terminated and the temporary injunction was dissolved by this Court, Bowls will prevail on its Lanham Act claims.

### 1.    MCB Has Violated Section 32 of the Lanham Act

To prevail on a Lanham Act claim for federal trademark infringement (Section 32) or federal unfair competition (Section 43),[2] Bowls must demonstrate that: (1) he owns valid and legally protectable marks; and (2) MCB's use of the marks to identify goods or services causes a likelihood of confusion. *Opticians Assn. of Am. v. Indep. Contractors of A*m., *supra* at 192. Establishing a likelihood of confusion means that the infringer's conduct "is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004). Confusion about whether the infringer's goods or services are affiliated or sponsored by the trademark owner (even confusion among non-purchasers) is actionable to protect against the loss of reputation or goodwill. *Kos Pharms., Inc. v. Andrx Corp.,* 369 F.3d 700, 711 (3d Cir. 2004) (holding that the Lanham Act protects against any likelihood of confusion, mistake or deception).

---

[2]   Federal trademark infringement and federal unfair competition under the Lanham Act are measured by identical standards. A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000). Conduct that violates Section 32 of the Lanham Act (unauthorized use of registered marks) also violates Section 43 of the Act (false designation of origin). General Motors Corp. v. New A.C. Chevrolet, Inc., 91 F. Supp. 2d 733, 742-43 (D.N.J. 2000).

Likelihood of confusion may be established by satisfying a number of different factors, including:  (1) the similarity of the parties' marks; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion; (5) defendant's intent in adopting the mark; (6) evidence of actual confusion; (7) whether the goods are marketed or advertised through the same channels; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers; and (10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market or that he is likely to expand into that market.  *Interspace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983).  The *Lapp* factors are afforded such weight in each case as the particular facts warrant, and not all factors will be relevant or need to be used in all cases.  *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 215 (3d Cir. 2000) ("If products are directly competing, and the marks are clearly very similar, a district judge should feel free to consider only the similarity of the marks themselves," *citing Opticians Ass'n of Am. v. Independent Opticians of Am.*, *supra* at 195 (3d Cir. 1990) ("very little analysis" was necessary in a case where a splinter group of a larger organization continued to use the organization's collective mark).

### a.    Bowls Owns Valid Trademark Registrations

There is no dispute that Bowls owns the TONY BOWLS Trademarks.  Bowls owns two federal trademark registrations for the mark TONY BOWLS.  (Bowls. Cert. ¶ 12, Ex. 71).  These registrations constitute *prima facie* evidence of the validity of those marks, of Bowls' ownership

of those marks, and of Bowls' exclusive right to use the registered marks in commerce for the goods identified in the registrations.  15 U.S.C. § 1115.

> **b.  MCB's Unauthorized Use of the TONY BOWLS Trademarks Causes a Likelihood of Confusion Because MCB Is Bowls' Former Licensee**

Notwithstanding the *Lapp* factors evaluated in traditional trademark infringement disputes to assess likelihood of confusion, courts recognize that a former licensee's unauthorized use of the licensor's trademark after termination of the license *alone* establishes a likelihood of confusion.  *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371 (3d Cir. 1992) (granting preliminary injunction against holdover franchisee, finding termination of a trademark license precludes any further use of the trademark by the licensee); *Dunkin' Donuts Franchising, LLC v. Claudia I, LLC*, 2014 U.S. Dist. LEXIS 149347 (E.D. Pa. Oct. 20, 2014) ("Continued post-termination use of trademarks by a former franchisee satisfies the requirements of trademark infringement under the Lanham Act."); *Ramada Worldwide, Inc. v. RIP Mgmt. Group Corp.*, 2009 U.S. Dist. LEXIS 53808, 20-24 (D.N.J. June 25, 2009) (granting summary judgment on plaintiff's Lanham Act claims for defendants' unauthorized use of plaintiff's trademarks post-license termination, finding that such use caused a likelihood of confusion as a matter of law, without analysis of the *Lapp* factors).  The law is clear: "Continued use of a trademark by a licensee after the termination of the licensing agreement constitutes trademark infringement." *Unicasa Mktg. Group, LLC v. Martha Spinelli*, 2007 U.S. Dist. LEXIS 16628 (D.N.J. Mar. 7, 2007).  Therefore, as a matter of law, MCB's continued use of Bowls' identical TONY BOWLS trademarks causes a likelihood of confusion.

> **c.  The Relevant *Lapp* Factors Also Establish a Likelihood of Confusion**

An analysis of the relevant *Lapp* factors also establishes that MCB's unauthorized holdover use of Bowls' TONY BOWLS Trademarks causes a likelihood of confusion.

### i.  MCB's "Marks" Are Identical to Bowls' Marks

Obviously, "there is a great likelihood of confusion when an infringer uses the exact trademark as the [trademark owner]." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. N.J. 1992). It is undisputed that MCB is using Bowls' federally registered trademark and personal name TONY BOWLS, as well as additional TONY BOWLS-formative marks such as TONY BOWLS PARIS, TONY BOWLS LE GALA, TONY BOWLS EVENING, TONY BOWLS COLLECTION, TONY BOWLS SHORTS, TONY BOWLS BRIDAL and TONY BOWLS JUNIORS. This factor weighs heavily in Bowls' favor as an infringer's use of identical marks leads to inevitable confusion. *Mister Softee, Inc. v. Amanollahi*, 2014 U.S. Dist. LEXIS 90370, 17-18 (D.N.J. July 1, 2014).

### ii.  The Parties Products Are Identical

Both Bowls and MCB are using the TONY BOWLS Trademarks in connection with women's formalwear. Therefore, this factor favors Bowls.

### iii.  The TONY BOWLS Marks Are Strong

The "strength" of a trademark is determined by two factors: (1) the mark's distinctiveness, or conceptual strength; and (2) the commercial strength or marketplace recognition of the mark. *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F. 3d 175, 184-185 (3d Cir. 2010). The TONY BOWLS Trademarks are strong on account of continuous, widespread, worldwide use of the marks for many years, widespread publicity of Bowls as a designer as well as of his namesake TONY BOWLS-branded dress lines, substantial sales of TONY BOWLS-branded formalwear, and substantial marketing expenditures to promote TONY BOWLS-branded formalwear. (*See*, e.g., Bowls Cert. ¶¶ 5-11). By entering into the License

Agreement to license the TONY BOWLS Trademarks for royalties, MCB conceded that those marks were commercially strong. This factor also weighs in Bowls' favor.

### iv.      The Parties Use Identical Marketing Channels

Bowls and MCB both advertise their formalwear through traditional Internet retailer websites, as well as heavily market through the social media websites and applications Facebook, Instagram and Twitter (Bowls Cert. ¶¶ 19-31); thus, this factor favors Bowls.

### v.      MCB's Intent to Deceive Is Clear

"Although evidence of a party's intentional use of another party's mark to cause confusion is not required to establish a violation of the Lanham Act, evidence of intentional use of another party's mark closely similar to an existing mark, weighs strongly in favor of finding the likelihood of confusion." *Pennzoil-Quaker State Co. v. Smith*, 2008 U.S. Dist. LEXIS 124298 (W.D. Pa. Mar. 7, 2008) (*citing Checkpoint Sys. v. Check Point Software Techs.,inc*, 269 F.3d 270, 286 (3d Cir. 2001)). An intent to deceive is established where, as here, an infringer continues to use a trademark owner's trademarks without authorization after receipt of a cease and desist letter. *See Howard v. Laws*, 2014 U.S. Dist. LEXIS 111092, 13-14 (D.N.J. Aug. 12, 2014) (finding defendant intended to confuse consumers when it was aware of plaintiff's mark, adopted an identical mark, and continued to use the mark despite receipt of a cease and desist letter from plaintiff and being served with an infringement complaint).

### 2.      MCB Has Violated Section 43(a) of the Lanham Act

Section 43(a) prohibits certain acts of unfair competition, including infringement of unregistered trademarks and false designation of origin. *See* 15 U.S.C. § 1125. The elements of a claim under Section 43(a) are "(1) that the trademark or trade name is distinctive and therefore, protectable; and (2) that the second comer's actions cause a likelihood of confusion among the relevant consumers." *Birthright v. Birthright Inc.*, 827 F. Supp. 1114, 1136 (D.N.J. 1993).

20

As discussed above, MCB is using marks identical to Bowls' TONY BOWLS Trademarks for identical products, advertising in the same marketing channels, and to the same target customers – without Bowls' authorization and over his clear objections. Further, MCB is falsely representing to consumers that it is the "Official prom manufacturer for Tony Bowls," and the "licensee of Tony Bowls," which has not been true since this Court dissolved the TRO on March 25, 2015, let alone when the License Agreement terminated in November 2014. (*See*, e.g., Bowls Cert. ¶¶ 23, 24, 26.) Because Bowls will prevail on his Section 32 Lanham Act claim, he will also prevail on its Section 43 claim. *Wyndham Hotels & Resorts, LLC v. Northstar Mt. Olive, LLC*, 2013 U.S. Dist. LEXIS 44468 (D.N.J. Mar. 28, 2013) (holdover franchisee violated both Section 32 and Section 43 of the Lanham Act for unauthorized post-termination use of franchisor's marks, explaining that "[c]ourts have recognized that liability under Section 43 arises necessarily upon a finding of liability under Section 32 of the Lanham Act.").

## C.   MCB's Conduct Has Irreparably Harmed, and Continues to, Irreparably Harm, Bowls

Trademark infringement, by its very nature, causes irreparable injury. *Opticians*, 920 F.2d at 196-96 ("Grounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.") There can be no doubt that Bowls will continue to suffer irreparable injury if MCB is permitted to continue its uncontrolled use of the TONY BOWLS Trademarks during the pendency of this action. As detailed above, MCB is intentionally infringing Bowls' TONY BOWLS Trademarks and has represented that it will continue to use the mark "until the Court has made a final determination on the propriety of Bowls' October 2014 termination notice." (Ex. 92 to Rosen Cert.) Bowls cannot control the quality and nature of the goods offered by MCB under the TONY BOWLS Trademarks. Bowls has lost the ability

21

to control his own trademarks and the goodwill and reputation associated with those marks. Therefore, Bowls has already suffered – and is continuing to suffer – irreparable injury.   In fact, Bowls has already suffered demonstrable harm because recently, multiple customers have publicized complaints on social media websites towards "Tony Bowls" and the TONY BOWLS-brand, for MCB's failure to timely deliver TONY BOWLS-brand dresses they ordered.  (*See e.g.* Bowls Cert. ¶¶ 42-45, Exs. 89-90 to Bowls Cert.).  Bowls was not responsible for MCB's poor customer service, and cannot control the quality of MCB's customer service for goods sold under the TONY BOWLS Trademarks, because MCB has hijacked the marks as a holdover licensee. This goes to the very heart of irreparable harm.  *See Villanova Univ. v. Villanova Alumni Educ. Found.*, 123 F. Supp. 2d 293, 310 (E.D. Pa. 2000) (granting preliminary injunction against former licensee and finding irreparable harm due to the trademark owner's potential loss of control over its mark, explaining that "[t]he potential loss of control, and hence, the risk of harm, is particularly acute where, as here, [d]efendant was a former licensee of plaintiff.").

**D.     The Balance of Hardships Weighs Heavily in Bowls' Favor**

Hardships to the respective parties is evaluated when considering the grant of injunctive relief.  Here, Bowls has demonstrated a substantial likelihood of success on the merits of its Lanham Act claims.  Bowls is suffering substantial irreparable injury as a matter of law, as he has lost control over the use of his TONY BOWLS Trademarks and, indeed, his personal name. MCB has flagrantly, intentionally and illegally misappropriated Bowls' TONY BOWLS Trademarks, despite Bowls' termination of the License Agreement and repeated instructions to MCB to cease use of the marks.  Further, MCB has repeatedly informed Bowls that it will not stop using the TONY BOWLS Trademarks unless and until the court reaches a "final determination" concerning its allegation that Bowls' termination was improper.  Any potential harm to MCB that may result from being preliminarily enjoined from continuing to infringe is

legally irrelevant. *See Otiogiakhi v. AAMCO Transmissions, Inc.,* 2011 U.S. Dist. LEXIS 132601 *22 (D.N.J. Nov. 17, 2011) (granting preliminary injunction, finding licensor's harm of irreparable injury outweighed the harm occasioned upon holdover licensee for his failure to comply with the terms of the license agreement, because licensee "cannot suffer legally cognizable harm in being precluded from exercising rights that he does not lawfully possess.")

Moreover, where, as here, both parties may suffer harm, but that harm was a result of the infringer's own conduct, the issuance of the trademark owner's requested injunction does not impose a greater hardship on the infringer than denial would impose on the trademark owner. *Opticians Ass'n of America v. Independent Opticians of America*, *supra* at 197 (3d Cir. 1990) (reversing denial of preliminary injunction against holdover licensee, explaining that one who uses another's trademark without permission "can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself"); *Villanova Univ. v. Villanova Alumni Educ. Found.,* 123 F. Supp. 2d 293, 311 (E.D. Pa. 2000) (granting preliminary injunction against former licensee; in finding balancing of hardships favored trademark owner, court explained that "Defendant is responsible for its own plight by continuing to use [licensor's] marks despite the termination of the license that allowed such use.").  As shown in Bowls' Proposed Order Granting Preliminary Injunction, Bowls does not seek to wholly bar MCB from using the TONY BOWLS Trademarks but is fully prepared to honor the provision of the License Agreement allowing MCB to use the marks in a very limited fashion, and for a limited time period, to sell-off its existing inventory of dresses designed by Bowls. (See Ex. 72 to Bowls Cert., License Agreement, § 7.5).

Therefore, the harm to Bowls clearly outweighs any harm to MCB, and this third factor also weighs in favor of granting a preliminary injunction.

**E.      Issuing a Preliminary Injunction Serves the Public Interest**

The public interest, in a trademark case, is the right "not to be deceived or confused." *Liquid Glass Enters. v. Dr. Ing. h.c.F. Porsche AG*, 8 F. Supp. 2d 398, 407 (D.N.J. 1998), *citing Opticians Ass'n of America*, 920 F.2d at 197.   Where, as here, a likelihood of confusion arises from the concurrent use of a trademark, the infringer's use damages the public interest.   *Jiffy Lube*, 968 F.2d at 379.   Further, the potential for consumer confusion – and thus damage to the public interest – is far greater here than in the case of a random infringer, because through MCB's prior licensee status, consumers have already associated MCB in their minds in some significant way with the TONY BOWLS Trademarks.   To deny injunctive relief and permit MCB to continue to use the TONY BOWLS Trademarks despite Bowls' termination of the License Agreement would perpetuate the inevitable confusion caused by MCB's use of identical trademarks and constitute a fraud upon the public.   *ITT Industries, Inc. v. Wastecorp, Inc.*, 87 F. App'x. 287, 293 (3d Cir. 2004) ("The unauthorized use of a mark by a former licensee presents a particular danger of confusion to the public.   It has been described as a fraud on the public, since they are led to think that the ex-licensee is still connected with the licensor.")   Therefore, enjoining MCB from deceiving consumers into believing that MCB is still an authorized TONY BOWLS licensee, and that MCB is the origin of TONY BOWLS-branded formalwear, would serve the public interest by eliminating consumer confusion.

## CONCLUSION

For all of the foregoing reasons, Bowls respectfully requests that this Court grant his Motion for a Preliminary Injunction, prohibiting MCB's from: (i) its continued use of Bowls' name or Bowls' registered and common law TONY BOWLS trademarks (collectively, the "TONY BOWLS Trademarks") in any capacity; (ii) making, or causing to be made, or disseminating any statement (including, but not limited to, vendors, retailers, customers, media or the general public), whether such statement is made verbally or in writing, that MCB remains authorized to manufacture, market, distribute, promote and/or sell any lines of dresses using Bowls' licensed mark; (iii) directing that MCB immediately remove from its website and from all social media sites Bowls' name and the TONY BOWLS Trademarks; (iv) transfering to Bowls the domain name, TonyBowls.com; and (v) granting such other relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
*Attorneys for Defendant Tony Bowls*


By:  /s/ David I. Rosen
      DAVID I. ROSEN
      drosen@sillscummis.com

Dated:  April 17, 2015

2625069 v5