SILLS CUMMIS & GROSS P.C.
David I. Rosen, Esq.
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000
*Attorneys for Defendant, Tony Bowls*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------------------------------------- x
                                :   Civil Action No.
                                :   3:14-cv-08107(MAS)(LHG)

MON CHERI BRIDALS, LLC,        :

             Plaintiff,     :   **DEFENDANT'S ANSWER TO**
                                :   **FIRST AMENDED COMPLAINT**
vs.                               :   **AND AMENDED**
                                :   **COUNTERCLAIMS**
TONY BOWLS,                :

             Defendant.     :

                                :
---------------------------------------------------------------- x

       Defendant, Tony Bowls ("Bowls"), by and through his attorneys, Sills Cummis & Gross

P.C., for his Answer to the First Amended Complaint ("Amended Complaint") filed by Plaintiff

Mon Cheri Bridals, LLC ("MCB"), states as follows:

## PARTIES

       1.      Admits, upon information and belief, the allegations contained in paragraph 1 of

the Amended Complaint.

       2.      Denies the allegations contained in paragraph 2 of the Amended Complaint, but

admits that Bowls, an individual, is a former employee of MCB, and admits further that he

resides at 450 Alton Road, #1106, Miami Beach, Florida.

## VENUE AND JURISDICTION

3.      Admits the allegations contained in paragraph 3 of the Amended Complaint.

4.      Admits the allegations contained in paragraph 4 of the Amended Complaint.

## FACTS

5.      Admits, upon information and belief, the allegations contained in the first sentence of paragraph 5 of the Amended Complaint.  Denies knowledge or information sufficient to form a belief concerning the truth or falsity of the allegations contained in the second and third sentences of paragraph 5 of the Amended Complaint.

6.      With respect to paragraph 6 of the Amended Complaint, admits that MCB manufactures and distributes on a wholesale basis wedding dresses and social occasion wear in the United States, but denies knowledge or information sufficient to form a belief concerning the truth or falsity of the remaining allegations contained in paragraph 6 of the Amended Complaint.

7.      Admits, upon information and belief, the allegations contained in paragraph 7 of the Amended Complaint.

8.      Denies knowledge or information sufficient to form a belief concerning the truth or falsity of the allegations contained in paragraph 8 of the Amended Complaint.

9.      Admits that Stephen N. Lang ("Lang") met Bowls approximately 10 years ago and that Bowls was hired in 2005; except as so admitted, denies the remaining allegations contained in paragraph 9 of the Amended Complaint.  Further states that prior to employment with MCB, Bowls designed pageant and social occasion gowns and sold them through catalogs and other avenues, including a website.  Further states that MCB reimbursed investors in the existing Tony Bowls line as part of hiring Bowls.

10.      Admits the allegations contained in paragraph 10 of the Amended Complaint.

2

11.     Admits that Bowls and MCB were parties to a License Agreement, as alleged in paragraph 11 of the Amended Complaint, but denies MCB's characterization of the contents of the License Agreement, and leaves it to the Court to ascertain its true meaning.

12.     Admits that Bowls and MCB were parties to an Employment Agreement, as alleged in paragraph 12 of the Amended Complaint, but denies MCB's characterization of the contents of the License Agreement, and leaves it to the Court to ascertain its true meaning.

13.      Admits that Bowls and MCB were parties to a a License Agreement and an Employment Agreement, as alleged in paragraph 13 of the Amended Complaint, but denies MCB's characterization of the contents of those agreements, and leaves it to the Court to ascertain their true meaning.

14.     Denies knowledge or information sufficient to form a belief concerning the truth or falsity of the allegations contained in paragraph 14 of  the Amended Complaint.

15.     Denies the allegations contained in the first sentence of paragraph 15 of the Amended Complaint.  Admits, upon information and belief, the allegations contained in the second sentence of paragraph 15 of the Amended Complaint.  States that Steven Roddy ("Roddy") was hired by MCB at the direction of Lang.

16.     Admits the allegations contained in paragraph 16 of the Amended Complaint.

17.     Admits the allegations contained in paragraph 17 of the Amended Complaint.

18.     Admits that Lang informed Roddy that MCB wished to hire him and that he moved to Philadelphia, but states that this was at the behest of Lang, who insisted on overseeing his activities, and for the better utilization of his services in connection with not only the Tony Bowls collections but other MCB products as well.  Except as so admitted, denies the remaining allegations contained in paragraph 18 of the Amended Complaint.

19.      Admits that Roddy developed some new branding strategies for MCB, but states that both Bowls and Lang were concerned with his meager output and lack of a positive impact for MCB.  Further, Bowls denies that he was designing for or under the "Mon Cheri banner." Further states that Bowls was designing for the Tony Bowls brand, pursuant to the relevant agreements between the parties.   Except as so admitted, denies the remaining allegations contained in paragraph 19 of the Amended Complaint.

20.      Admits that MCB has paid royalties due Plaintiff arising under the License Agreement.  Except as so admitted, denies knowledge or information sufficient to form a belief as to whether MCB has paid Bowls all of the royalties he is due under the License Agreement, and denies the remaining allegations contained in paragraph 20 of the Amended Complaint.

21.      Admits that Bowls has terminated the License Agreement in accordance with its express terms.  Except as so admitted, denies the remaining allegations contained in paragraph 21 of the Amended Complaint.

22.      Admits that on or about October 10, 2014, Bowls' counsel delivered a letter to MCB's counsel, as alleged in paragraph 20 of the Amended Complaint, containing a 30 days' notice of termination of the License Agreement provision ("Termination Notice", attached as Exhibit C to the Certification of Steven N. Lang ("Lang Cert.") dated November 3, 2014), but denies MCB's characterization of the contents of said letter, and leaves it to the Court to ascertain its true meaning.

23.      Denies the allegations contained in paragraph 23 of the Amended Complaint, but admits that Bowls voluntarily resigned his employment with MCB, pursuant to the express terms of the Employment Agreement, by means of a letter from Bowls dated September 16, 2014.

24.     With respect to paragraph 24 of the Amended Complaint, admits that the Termination Notice identified grounds constituting breaches of the License Agreement by MCB, denies MCB's characterization of the contents of the Termination Notice, and leaves it to the Court to ascertain its true meaning.

25.     With respect to paragraph 25 of the Amended Complaint, admits that MCB's counsel responded to the Termination Notice, denies MCB's characterization of the contents of said response, and leaves it to the Court to ascertain its true meaning.

26.     Denies the allegations contained in paragraph 26 of the Amended Complaint.

27.     Denies the allegations contained in paragraph 27 of the Amended Complaint.

28.     Denies knowledge or information sufficient to form a belief concerning the truth or falsity of the allegations contained in paragraph 28 of the Amended Complaint.

29.     Denies the allegations contained in paragraph 29 of the Amended Complaint.

30.     With respect to paragraph 30 of the Amended Complaint, denies knowledge or information sufficient to form a belief concerning what "Lang has seen . . . happen with other companies," and denies the remaining allegations contained in paragraph 30 of the Amended Complaint.

## FIRST COUNT
### (Equitable Relief – Specific Performance)

31.     Incorporates by reference his responses to the allegations contained in paragraphs 1 through 30 of the Amended Complaint, with the same force and effect as if fully set forth herein at length.

32.     Denies the allegations contained in paragraph 32 of the Amended Complaint.

33.     Denies the allegations contained in paragraph 33 of the Amended Complaint.

34.     Denies the allegations contained in paragraph 34 of the Amended Complaint.

35.     Denies the allegations contained in paragraph 35 of the Amended Complaint.

36.     Denies the allegations contained in paragraph 36 of the Amended Complaint.

37.     Denies the allegations contained in paragraph 37 of the Amended Complaint.

## SECOND COUNT
### (Breach of Contract/Wrongful Repudiation of License Agreement)

38.     Incorporates by reference his responses to the allegations contained in paragraphs 1 through 37 of the Amended Complaint, with the same force and effect as if fully set forth herein at length.

39.     With respect to paragraph 39 of the Amended Complaint, denies MCB's characterization of the contents of the License Agreement and leaves if to the Court to ascertain its true meaning.

40.     With respect to paragraph 40 of the Amended Complaint, denies MCB's characterization of the contents of the Employment Agreement, and leaves if to the Court to ascertain its true meaning.

41.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 41 of the Amended Complaint.

42.     Denies the allegations contained in paragraph 42 of the Amended Complaint.

43.     Denies the allegations contained in paragraph 43 of the Amended Complaint.

44.     Denies the allegations contained in paragraph 44 of the Amended Complaint.

45.     Denies the allegations contained in paragraph 45 of the Amended Complaint.

### THIRD COUNT
**Breach of Contract of Employment Agreement**

46.     Incorporates by reference his responses to the allegations contained in paragraphs 1 through 45 of the Amended Complaint, with the same force and effect as if fully set forth herein at length.

47.     With respect to paragraph 47 of the Amended Complaint, admits that Bowls and MCB were parties to an Employment Agreement, but denies MCB's characterization of the contents of the Employment Agreement, and leaves if to the Court to ascertain its true meaning.

48.     With respect to paragraph 48 of the Amended Complaint, admits that Bowls and MCB were parties to an Employment Agreement, but denies MCB's characterization of the contents of the Employment Agreement, and leaves if to the Court to ascertain its true meaning.

49.     With respect to paragraph 49 of the Amended Complaint, admits that Bowls and MCB were parties to an License Agreement, but denies MCB's characterization of the contents of the License Agreement and leaves if to the Court to ascertain its true meaning.

50.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 50 of the Amended Complaint.

51.     Denies the allegations contained in paragraph 51 of the Amended Complaint.

52.     Denies the allegations contained in paragraph 52 of the Amended Complaint.

53.     Denies the allegations contained in paragraph 53 of the Amended Complaint.

### FOURTH COUNT
**(Declaratory Judgment)**

54.     Incorporates by reference his responses to the allegations contained in paragraphs 1 through 53 of the Amended Complaint, with the same force and effect as if fully set forth herein at length.

55.     Denies the allegations contained in paragraph 54 of the Amended Complaint, but admits that MCB materially breached the License Agreement and, on the basis of the express terms of the License Agreement, Bowls had the right to terminate the License Agreement as a result of said material breaches.

56.     Admits that MCB has denied breaching the License Agreement, as alleged in paragraph 56 of the Amended Complaint.

57.     Denies knowledge or information sufficient to form a belief concerning the truth or falsity of the allegations contained in paragraph 57 of the Amended Complaint.

## FIFTH COUNT
### (Breach of Fiduciary Duty and Duty of Loyalty)

58.      Incorporates by reference his responses to the allegations contained in paragraphs 1 through 57 of the Amended Complaint, with the same force and effect as if fully set forth herein at length.

59.     Denies the allegations contained in paragraph 59 of the Amended Complaint.

60.     Denies the allegations contained in paragraph 60 of the Amended Complaint.

61.     Neither admits nor denies the allegations contained in paragraph 61 of the Amended Complaint, because they call for a legal conclusion.

62.     Denies the allegations contained in paragraph 62 of the Amended Complaint.

63.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 63 of the Amended Complaint.

64.      Denies the allegations contained in paragraph 64 of the Amended Complaint.

65.     Denies the allegations contained in paragraph 65 of the Amended Complaint.

66.     Denies the allegations contained in paragraph 66 of the Amended Complaint.

## SIXTH COUNT
**(Breach of the Duty of Good Faith and Fair Dealing – License Agreement)**

67.　　Incorporates by reference his responses to the allegations contained in paragraphs 1 through 66 of the Amended Complaint, with the same force and effect as if fully set forth herein at length.

68.　　Denies the allegations contained in paragraph 68 of the Amended Complaint.

69.　　Neither admits nor denies the allegations contained in paragraph 69 of the Amended Complaint, because they call for a legal conclusion.

70.　　Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 70 of the Amended Complaint.

71.　　Denies the allegations contained in paragraph 71 of the Amended Complaint.

## SEVENTH COUNT
**(Breach of the Duty of Good Faith and Fair Dealing- Employment Agreement)**

72.　　Incorporates by reference his responses to the allegations contained in paragraphs 1 through 71 of the Amended Complaint, with the same force and effect as if fully set forth herein at length.

73.　　Denies the allegations contained in paragraph 73 of the Amended Complaint.

74.　　Neither admits nor denies the allegations contained in paragraph 74 of the Amended Complaint, because they call for a legal conclusion.

75.　　Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 75 of the Amended Complaint.

76.　　Denies the allegations contained in paragraph 76 of the Amended Complaint.

## DEFENSES

### FIRST DEFENSE

The Amended Complaint, in whole or in part, fails to state a claim for which relief may be granted.

### SECOND DEFENSE

Bowls properly terminated the License Agreement in accordance with its express terms.

### THIRD DEFENSE

MCB cannot establish that it suffered "irreparable harm" by reason of any actions taken by Bowls and, as a consequence thereof, it is not entitled to injunctive relief.

### FOURTH DEFENSE

MCB cannot establish that it is likely to prevail on the merits of the dispute and, as a consequence thereof, it is not entitled to any temporary or preliminary injunctive relief.

### FIFTH DEFENSE

Because the balance of hardships, comparing those faced by Bowls and MCB, tips decidedly in favor of Bowls, MCB is not entitled to any injunctive relief.

### SIXTH DEFENSE

Because any injuries allegedly sustained by MCB by reason of any actions taken by Bowls can be fully remedied by an award of monetary damages, MCB is not entitled to any injunctive relief.

### SEVENTH DEFENSE

Because MCB has not acted with "clean hands," it is not entitled to any of the equitable relief it seeks.

## EIGHTH DEFENSE

Because MCB failed to perform all of its obligations to Bowls under the License Agreement, it is estopped from contesting Bowls' termination of the License Agreement.

## NINTH DEFENSE

Because MCB failed to perform all of its obligations to Bowls under the License Agreement, it waived the right to contest Bowls' termination of the License Agreement.

## TENTH DEFENSE

Because, upon information and belief, MCB has failed to mitigate, or reasonably attempt to mitigate, its damages, if any, Bowls is entitled to an offset in the amount MCB could have mitigated its damages.

## ELEVENTH DEFENSE

MCB's claims are barred by the doctrine of unjust enrichment.

## TWELFTH DEFENSE

Bowls reserves the right to assert any and all defenses that may develop during the course of this matter, via discovery or otherwise.

**WHEREFORE**, Defendant demands that the Amended Complaint be dismissed in its entirety, and that he be awarded his costs, disbursements, reasonable attorneys' fees and such other and different relief as the Court may be deemed appropriate.

## AMENDED COUNTERCLAIMS

Defendant, Tony Bowls ("Bowls"), by and through his attorneys Sills Cummis & Gross P.C., for his Counterclaims against Plaintiff Mon Cheri Bridals, LLC ("MCB"), states as follows:

2620269 v3

## JURISDICTION AND VENUE

1.     MCB is a limited liability company organized under the laws of the State of New Jersey, with its principal place of business located at 1018 Whitehead Road, Trenton, New Jersey.  It is a citizen of the State of New Jersey.

2.     Bowls is an individual who resides at 450 Alton Road, #1106, Miami Beach, Florida.

3.     As set forth below, Bowls claims damages from MCB in an amount in excess of $75,000, exclusive of interest and costs.

4.     This Court has jurisdiction over this action pursuant to the provisions of Title 28, United States Code, Section 1332, in that the matter in controversy is a dispute between citizens of different states and exceeds the sum of $75,000.

5.     This Court has jurisdiction over this action pursuant to the provisions of Title 28, United States Code, Section 1331, in that part of the matter in controversy, as set forth in these counterclaims, arises under the Lanham Act, 15 U.S.C. § 1051, *et seq*.

6.     This Court has supplemental jurisdiction over this matter pursuant to the provisions of Title 28, United States Code, Section 1367, because the claims asserted in these counterclaims form part of the same case or controversy alleged in MCB's Amended Complaint.

7.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(a) in that MCB resides in the District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

12

## PARTIES

8.     MCB is a limited liability corporation organized under the laws of the State of New Jersey, with its principal place of business located at 1018 Whitehead Road, Trenton, New Jersey, is a citizen of the State of New Jersey.

9.     Bowls is an individual who resides at 450 Alton Road, #1106, Miami Beach, Florida.

## FACTS

10.     Bowls is a fashion designer who specializes in the design of women's formal attire, including formal prom and pageant dresses and gowns.  Bowls has been in the business of designing apparel for over 20 years.

11.     Prior to his employment by MCB, Bowls operated a retail dress shop, and designed, manufactured, marketed and sold dresses for prom and pageant, including Miss America, Miss USA and Miss Universe pageant contestants.

12.     Prior to his employment by MCB, Bowls had developed a reputation within the women's formal wear community related to the above described dresses, such that his name, image and designs were readily recognizable and sought after.

13.     Bowls is the Owner of the federally registered trademark TONY BOWLS, registration no. 3557188.

14.     Bowls was recruited by MCB and began his employment there as a designer of formal, prom and pageant dresses and gowns in 2005.

15.     In 2008, Bowls and MCB entered into an Employment and Design Services Agreement as well as a License Agreement.  These agreements were superseded by the Employment and Design Services Agreement, executed by Bowls and MCB on October 18,

2011 ("Employment Agreement", attached as Exhibit A to the Lang Cert.) and the License

Agreement executed by Bowls and MCB on October 18, 2011 ("License Agreement", attached

as Exhibit B to the Lang Cert.).

16.     The License Agreement addresses several issues.  The primary purpose of the

License Agreement is the grant of a right to MCB to use Bowls' Trademark to market Prom

Dresses, Evening Dresses, Pageant Dresses, Wedding Dresses and Junior Prom Dresses.  *See*

License Agreement, Section 1.  In exchange for the grant of that License, MCB is required to pay

Bowls Royalties.  With regard to Royalty payments, the License Agreement states:

> **3.**     **ROYALTY.**  During the Term and in consideration of the License
> granted hereunder, MCB will pay Bowls the royalty set forth on
> **Schedule B** of this Agreement, based on its annual Net Sales of the
> Dresses bearing the Licensed Marks (the "Royalty").  The Royalty
> will be paid monthly within twenty-five (25) days of the end of the
> applicable month.

> **4.**     **SALES REPORTS, RECORDS AND AUDIT RIGHTS.**

> 4.1     Sales Reports.  At the time of each required payment of the
> Royalty, MCB will provide a general sales report to Bowls for the
> month for which a payment is being made, which will document
> all Net Sales during such period solely for the purpose of Bowls
> confirming the accuracy, validity, and justification for the
> applicable Royalty payment (the "**Sales Reports**").

17.     The License Agreement defines the term "Net Sales" Section 1 as follows:

> **"Net Sales"** means gross revenues received by MCB for the sale
> of the Dresses less taxes imposed on such sales, international
> custom duties on shipments to customers and shipping (if listed
> separately on the invoice), returns, trade allowances and
> uncollectible accounts.

18.     In July 2012, Bowls received a monthly Royalty payment from MCB together

with the Sales Report.  Upon analysis of this Sales Report, Bowls discovered that he had not

received all of the Royalty payments that were due to him.

19.     On or about July 27, 2012, less than a year after the execution of the License Agreement, counsel for Bowls informed MCB that it had failed to pay the Royalty that was due under the License Agreement, and that such failure was a material breach of the Agreement.  A true and accurate copy of the relevant email correspondence to Stuart Steinmann, MCB's Chief Financial Officer is attached hereto as Exhibit 1.

20.     Shortly thereafter, MCB acknowledged the material breach by paying the unlawfully withheld Royalty payment.

21.     Subsequently, MCB ceased providing Bowls with Sales Reports that, pursuant to the License Agreement, must accompany his Royalty payments.

22.     Regarding waiver, the License Agreement states as follows:

> 9.8     Waiver.   No waiver of any of the provisions of this Agreement will be valid unless signed in writing by the Party against which the waiver is sought to be enforced.  No waiver by either Party of any breach of or failure of performance will be deemed a waiver as to any subsequent breach or failure of performance, whether or not similar, nor will any waiver constitute a continuing waiver.

23.     No waiver regarding either unpaid Royalty or Sales Reports was requested by MCB or signed by Bowls.

24.     The License Agreement does not grant to MCB an opportunity to cure its breach upon notice by Bowls.

25.     In 2011, Bowls and MCB entered into a License and Marketing Agreement with Jims Formal Wear (hereinafter, "JFW"), whereby JFW would manufacture, market and sell men's tuxedos and accessories utilizing the TONY BOWLS trademark ("JFW License and Marketing Agreement").  The JFW License and Marketing Agreement is attached hereto as Exhibit 2.

26.     Among other things, the JFW License and Marketing Agreement provided that JFW would pay a Royalty for the use of the TONY BOWLS trademark.  One half of the Royalty would be paid directly to Bowls.  The other half of the Royalty payment would be paid to MCB and denominated as a Co-Marketing Fee.  It was to be for the sole benefit of Bowls and used solely to market the TONY BOWLS trademarked product in conjunction with the JFW product utilizing the TONY BOWLS trademark.

27.     These third party funds were additional funds above and beyond the funds to be expended by MCB for Tony Bowls marketing.

28.     Upon information and belief, JFW has paid the Royalty when due and owing to Bowls.

29.     MCB has not provided any information to Bowls as to whether these third party funds were utilized by MCB to market the TONY BOWLS trademarked product.

30.     MCB and Bowls entered into a 2014 Sponsorship Agreement with the Miss America Organization ("MAO" and "MAO Sponsorship Agreement").  The cost of the sponsorship was $250,000.  $100,000 of that cost was paid directly by Bowls; the remaining $150,000 of the cost was paid by Bowls via MCB.  Bowls waived one year of his salary ($150,000) due him pursuant to the Employment Agreement (i.e. $150,000), and MCB was required to take that salary and pay it to MAO.  MCB also was required to provide dresses that were designed by Bowls.

31.     Just prior to the execution of the MAO Sponsorship Agreement, Bowls had been traveling and working extensively for MCB and was approached by Steve Lang ("Lang") of MCB.  Lang expressed that Bowls was spread too thin and was trying to do too much in his work for MCB.  Bowls was not only designing dresses but working extensively on marketing and

16

related tasks for MCB that were not originally envisioned by the various agreements.  Lang proposed to Bowls that he take a sabbatical for period of time.

32.    Bowls considered but ultimately did not accept Lang's proposal to take a sabbatical.

33.    MCB and Bowls discussed and were aware that the MCB Sponsorship Agreement would require additional work and time on the part of Bowls in the months leading up to the 2014 Miss America Pageant.

34.    Per the MAO Sponsorship Agreement, Bowls would be required to design numerous pageant gowns, and attend and coordinate photo shoots and appearances related to this event.

35.    Additionally, Bowls was required to prepare for designs and photo shoots of existing Tony Bowls lines, as well as prepare for and attend the 2014 Atlanta Market.

36.    This enormously busy schedule kept Bowls away from home for weeks at a time.

37.    Prior to and during this time period, MCB developed several new marketing strategies.

38.    On July 18, 2014, MCB registered and began developing the website www.moncheriprom.com.

39.    As early as 2005, MCB utilized the www.tonybowls.com website to market the various Tony Bowls products sold by MCB.

40.    Bowls was not given notice and did not consent to creation or maintenance of the www.moncheriprom.com website.

41.    Shortly after the new website was launched, Bowls was informed by third parties of its existence.

17

42.     On August 13, 2014, MCB launched a Facebook account entitled "Mon Cheri Prom" [https://www.facebook.com/moncheriprom/info].

43.     Facebook is a social media website, where users may post photos, videos and text about various subjects and share that information with other users.

44.     Since 2005, MCB has advertised its prom lines exclusively utilizing the trademark TONY BOWLS, including the use of the "Tony Bowls" Facebook account [https://www.facebook.com/tonybowls/info].

45.     While the Mon Cheri Prom Facebook account does reference Tony Bowls, it does not include TONY BOWLS in the account name nor does it include the TONY BOWLS trademark notification.

46.     Photos on the Mon Cheri Prom Facebook account include models wearing Tony Bowls dresses.  Some of these photos do not include any reference to the TONY BOWLS trademark.

47.     Bowls was not given prior notice of the launch of this Facebook page, nor did he consent to it.

48.     On August 14, 2014, MCB issued its first message on the Twitter social media website, utilizing its new Twitter account @moncheriprom.

49.     Twitter is a social media website and service that allows users to share messages that can contain text, photos and video content, with other users of Twitter.  These messages are known as "tweets."

50.     This Twitter account is being used by MCB to market prom and pageant dresses.

51.     Prior to the creation of @moncheriprom, MCB used the Twitter account @tonybowlsdesigns as the exclusive way to market prom and pageant dresses on Twitter.

18

52.     While @moncheriprom does reference Tony Bowls, it does not include the name TONY BOWLS in the account name nor does it include the TONY BOWLS trademark notifications.

53.     Photos on @moncheriprom include models wearing Tony Bowls dresses.  Some of these photos do not include any reference to the TONY BOWLS trademark.

54.     Bowls was not given prior notice of the launch of this Twitter account, nor did he consent to it.

55.     Earlier in 2014, MCB launched an Instagram account called MONCHERIPROM.

56.     Instagram is a social media website where photographs and short video clips are posted and shared with other account holders.

57.     MCB's Instagram account was launched without Bowls' knowledge or consent.

58.     MCB utilizes the MONCHERIPROM Instagram account to market prom and pageant dresses.

59.     On the MONCHERIPROM account, MCB requests that other users "tag" prom and pageant dress photos using the hashtag "#moncheriprom."

60.     A hashtag ("#") is a way of collecting, for public viewing, similarly themed photos that all bear the same hashtag.

61.     MCB did not promote a Tony Bowls hashtag.

62.     Previously, MCB had utilized the Instagram account TONYBOWLS as its sole Instagram presence for prom and pageant dress marketing.

63.     Bowls was made aware of the MONCHERIPROM Instagram account by third parties.

2620269 v3

64.     Upon such notification, Bowls made a request to Lang that MCB deactivate the MONCHERIPROM Instagram account because it was a breach of the License Agreement.

65.     MCB deactivated the MONCHERIPROM Instagram account.

66.     However, without Bowls knowledge or consent, MCB re-launched the MONCHERIPROM Instagram account in early October 2014.

67.     During this general time period, MCB developed a new logo that consists of a ridged pink circle with a white, serif "P", at an angle in the center. It is now used in connection with all prom and pageant lines marketed by MCB, as the lead visual element for its social media accounts, rather than the TONY BOWLS trademark.

68.     This logo was developed and employed without Bowls' knowledge or consent.

69.     This logo does not utilize the TONY BOWLS trademark, or reference it in any way.

70.     MCB has maintained a corporate website for a considerable period of time.  It is found at www.moncheribridals.com.  It has a section on prom dresses available at the following website: http://moncheribridals.com/prom-dresses/.

71.     For some period of time and up until shortly after October 10, 2014, the foregoing prom-dress website contained the following language:

> Mon Cheri also carries designs from other prom dress designers.  To make your search for the perfect prom dress easier and much more personalized, you can click on the categories to the left to conveniently sort through our extensive selection of designer prom dresses.

Bowls had only recently learned of this reference.

72.     Upon following the foregoing instructions, one is directed to a webpage that not only displays Tony Bowls prom dresses but also other formal dresses produced by MCB under other labels and were also apparently being marketed as prom dresses.

20

73.     The License Agreement termination notice sent by Bowls to MCB included notice that the website's reference to MCB carrying prom dresses by other designers was a material breach of the License Agreement.  Subsequently, MCB removed the breaching language thereby acknowledging that it was a material breach.

74.     On April 10, 2014, MCB joined with several other entities in filing a complaint against a number of counterfeiters and IP pirate websites and sought to obtain injunctive relief (United States District Court, District of New Jersey, Case 3:14-CV-02311-AET-LHG) ("Counterfeiters Action").

75.     The pleadings of the Counterfeiter Action sought protection of many trademarks. The two trademarks that MCB sought to protect were "2 BE PROM" AND "LE GALA BY MON CHERI".  On behalf of MCB, Lang affirmed, under penalty of perjury, that these two trademarks were currently used in commerce to promote MCB's prom dresses.

76.     These two trademarks do not reference or include the TONY BOWLS trademark.

77.     MCB actually uses TONY BOWLS LE GALA as a brand name, rather than "LE GALA BY MON CHERI."

78.     The Counterfeiters Action was prosecuted, and the other two trademarks were maintained, without Bowls' knowledge or consent.  MCB did not provide Bowls with proper notice, among other things.

79.     Section 5 of the License Agreement states as follows:

    **5.      USE OF THE LICENSED MARKS.**

        5.1    Use of the Licensed Marks.  MCB may not use the License Marks in a form and manner or for a subject matter that would or could reduce the value of the Licensed Marks.  When various product lines which use the Licensed Marks are used in any media, the entire product line name, including the Licensed Mark must be used (i.e. "Tony Bowls Paris" rather than "Paris", etc…).

21

5.2     <u>Trademark Notices</u>.   MCB will include such trademark and other proprietary notices on the Dresses and Collateral Materials as are otherwise required by applicable law to maintain Bowls' rights in such Licensed Marks.

5.3     <u>Use of the Licensed Mark on Website</u>.     MCB     shall include on all website pages on which any of the Dresses are mentioned or offered for sale the appropriate trademark notice.

80.     The "Licensed Marks" as described in the License Agreement are TONY BOWLS and other TONY BOWLS derived trademarks (e.g., TONY BOWLS LE GALA, TONY BOWLS PARIS, TONY BOWLS EVENING).

81.     The License Agreement also describes an event of default in Article 7.3(b)(v) as, "MCB markets prom or pageant dresses in any manner not using the Licensed Marks."

82.     MCB has been involved in numerous legal efforts to enjoin or recover damages from counterfeiters of its dresses.

83.     MCB's efforts in this regard include seeking protection of the TONY BOWLS trademark.

84.     At no time did MCB provide written notice to Bowls of infringing acts that are the bases for these legal efforts.

85.     At no time did MCB offer Bowls the first right to bring a lawsuit to obtain injunctive relief or damages resulting from the infringements.

86.     At no time did MCB give Bowls prior notice of its filing of these complaints.

87.     At no time did MCB seek to include Bowls as a party in the complaints seeking to protect Bowls' trademark.

88.     Article 8.3 of the License Agreement states, in relevant part, as follows:

8.3     <u>Third Party Unauthorized Use of Licensed Marks</u>.

(a)     Each Party agrees to notify the other, in writing, of any manufacture, distribution, sale or advertisement of any Dresses or

22

services that it believes may constitute an infringement or unfair competition involving the Licensed Marks, or a claim by a third party that use of the Licensed Marks by Bowls or MCB infringes the rights of a third party.

\* \* \*

(c)     MCB will promptly notify Bowls if MCB believes any third party is using the Licensed Marks or any marks confusingly similar thereto without authorization. Bowls will have the first right, but not the obligation, to pursue legal or other action with respect to any infringements of the Licensed Marks at his own expense. MCB will cooperate and assist Bowls in any such actions and agrees to be named as a nominal party, if necessary. If Bowls has brought a legal action or otherwise caused the abatement of any such infringement within thirty (30) days after MCB has given notice to Bowls of an infringement together with sufficient information to establish such infringement, then MCB may solely at its own expense, abate any such infringement or commence and prosecute such legal or other action. Bowls will cooperate and assist MCB in any such actions and agrees to be named as a nominal party, if necessary.

89.     At all times relevant hereto, Bowls fully performed his obligations under the License Agreement.

90.     At all times relevant hereto, Bowls fully performed his obligations under the MAO Sponsorship Agreement.

91.     MCB's above described acts and omissions constitute material breaches of the License Agreement.

92.     On October 10, 2014, counsel for Bowls delivered the Termination Notice. The Termination Notice letter sets forth the material breaches that were known to Bowls at that time.

93.     The October 10, 2014 letter also requests access to MCB's records regarding the sale, manufacture and marketing of TONY BOWLS trademarked dresses.

94.     To date, this inspection has not occurred.

23

95.     The inspection is currently scheduled for January 13, 2015, but has been rescheduled or cancelled many times before.

96.     Based on information and belief, MCB has failed to meet its marketing obligations required by the Licensing Agreement.

97.     Based on information and belief, MCB has failed to pay Bowls all Royalty payments when due.

98.     Based on information and belief, MCB has failed to meet its manufacturing and sales obligations required by the Licensing Agreement.

99.     Based on information and belief, MCB has failed to utilize funds for marketing that were received from third parties, as a result of Bowls' licensing of the TONY BOWLS trademark.

100.    Based on information and belief, MCB has sought to hinder the discovery of the failures identified in paragraphs 95 through 99 hereof.

**COUNT I**
**(Damages: Breach of Contract - License Agreement)**

101.    Bowls incorporates the allegations set forth in paragraphs 1 through 100 hereof as if fully set forth herein at length.

102.    The License Agreement is a valid and legally binding contract.

103.    At all times relevant hereto, Bowls honored all obligations created by the License Agreement, fully performing each such obligation.

104.    The JFW License and Marketing Agreement is a valid and legally binding contract.

105.    At all times relevant, Bowls honored all obligations created by the JFW License and Marketing Agreement, fully performing each such obligation.

24

106.    The License Agreement and the JFW License and Marketing Agreement created obligations for MCB.

107.    MCB failed to perform all of the obligations created by the License Agreement and the JFW License and Marketing Agreement.  The acts and omissions that constitute these failures, include, but are not limited to, the following.

a.    MCB's utilization of the trademark is in a form or manner that could reduce the value of the TONY BOWLS trademark, in violation of Articles 5.1, 5.2, 5.3 and 7.3(b)(v) of the License Agreement.

b.    MCB failed to include the TONY BOWLS trademark, as required in the product line names, to wit: "MON CHERI PROM", "2 B PROM", AND "LEGALA BY MON CHERI," in violation of Articles 5.1 and 5.2 of the License Agreement.

c.    MCB failed to include required trademark and proprietary notices on marketing materials, including but not limited to websites and social media websites (Facebook, Instagram, and Twitter).  Such failure could negatively impact Bowls' trademark rights.  This failure is in violation of Article 5.3 of the License Agreement.

d.    MCB marketed prom and pageant dresses in a manner not using the TONY BOWLS trademark, in violation of Article 7.3(b)(v) of the License Agreement.

e.    MCB violated Articles 5 and 7.3(b)(v) of the JFW License and Marketing Agreement by launching the www.moncheriprom.com website.

f.    MCB violated Articles 5 and 7.3(b)(v) of the JFW License and Marketing Agreement by launching the Mon Cheri Prom Facebook account.

g.    MCB violated Articles 5 and 7.3(b)(v) of the JFW License and Marketing Agreement by launching the MONCHERIPROM Instagram account.

h.    MCB violated Articles 5 and 7.3(b)(v) of the JFW License and Marketing Agreement by launching the @moncheriprom twitter account.

i.    MCB violated Articles 5 and 7.3(b)(v) of the JFW License and Marketing Agreement by utilizing the new MONCHERIPROM logo in print and digital formats with the public.

j.    MCB violated Article 7.3(b)(ii) of the License Agreement by failing to preserve and promote the good reputation of the TONY BOWLS trademark within the marketplace, to wit, its failure to maintain and operate the Tony Bowls

trademarked website, Facebook, Instagram and Twitter accounts in a professional manner, or in any manner at all in some cases.

k.      MCB failed to properly financially support the marketing of the TONY BOWLS trademark in violation of Article 7.3(b)(iii) of the License Agreement.

l.      MCB failed to properly financially support the marketing of the TONY BOWLS trademark in violation of the JFW License and Marketing Agreement.

m.      MCB failed to pay Royalty payments to Bowls when due in violation of Article 3 of the License Agreement.

n.      MCB failed to provide appropriate financial documentation with Royalty payments to Bowls, in violation of Article 4.1 of the License Agreement.

o.      MCB failed to provide adequate access to the financial records related to the sale, manufacture and marketing of TONY BOWLS trademarked products, in violation of Articles 4 and 7.3(b)(ii & iii) of the License Agreement.

p.      MCB failed to provide written notification to Bowls of infringements of the TONY BOWLS trademark in violation of Article 8.3(a) of the License Agreement.

q.      MCB failed to provide Bowls with the first right to legally defend his trademark in violation of Article 8.3(a) of the License Agreement.

r.      MCB failed to offer Bowls the opportunity to participate, cooperate and be at least a nominal party in litigation to defend the TONY BOWLS trademark in violation of Article 8.3(c) of the License Agreement.

s.      MCB continues to use the TONY BOWLS trademark in violation of Article 7.5 of the License Agreement.

108.    These failures of performance constitute substantial and material breaches of the License Agreement and the JFW License and Marketing Agreement.

109.    Bowls has been harmed and suffered damages far in excess of $75,000 as a result of MCB's numerous breaches of the License Agreement and the JFW License and Marketing Agreement.

<u>COUNT II</u>
**(Damages: Breach of Good Faith and Fair Dealing - License Agreement)**

110.    Bowls incorporates the allegations set forth in paragraphs 1 through 109 hereof as if fully set forth herein at length.

111.    The License Agreement is a valid and legally binding contract.

112.    At all times relevant hereto, Bowls honored all obligations created by the License Agreement, fully performing each such obligation.

113.    The JFW License and Marketing Agreement is a valid and legally binding contract.

114.    At all times relevant, Bowls honored all obligations created by the JFW License and Marketing Agreement, fully performing each such obligation.

115.    The License Agreement and the JFW License and Marketing Agreement created an implied covenant of good faith and fair dealing between MCB and Bowls.

116.    MCB was bound by a duty of good faith and fair dealing in both the performance of the License Agreement and the JFW License and Marketing Agreement.

117.    Under such duty, MCB was obligated to refrain from doing anything which would have the effect of destroying or injuring Bowls' right to receive the benefits of those agreements.

118.    To the extent that MCB did not act in a manner that was not expressly forbidden by the foregoing agreements, MCB acted in bad faith and acted arbitrarily, unreasonably and capriciously, with the objective of preventing Bowls from receiving his reasonably expected benefits created by the License Agreement and the JFW License and Marketing Agreement.  The acts and omissions that constitute these failures include, but are not limited to, those set forth in paragraph 107, above.

2620269 v3

119.    MCB's conduct constituted substantial and material breaches of the covenant of good faith and fair dealing arising under the License Agreement and the JFW License and Marketing Agreement.

120.    Bowls has been harmed and suffered damages far in excess of $75,000 as a result of MCB's numerous breaches of the covenant of good faith and fair dealing arising from the License Agreement and the JFW License and Marketing Agreement.

## COUNT III
### [Damages: Violation of Lanham Act]

121.    Bowls incorporates the allegations set forth in paragraphs 1 through 109 hereof as if fully set forth herein at length.

122.    On November 9, 2014, Bowls lawfully terminated the License Agreement.

123.    Pursuant to the License Agreement, upon termination thereof, MCB was only authorized to utilize the TONY BOWLS trademark and image in connection with then existing inventory and work in progress as of the date of termination.

124.    Subsequent to that date, MCB commenced new activities other than the sale of existing inventory or work in progress at the time of termination, utilizing the TONY BOWLS trademark in violation of the surviving terms of the License Agreement.

125.    Such actions constitute a false and misleading statement of fact, in that MCB had no authority to utilize the TONY BOWLS trademark, but held itself out to the public as having such authority.

126.    Such actions occurred in connection with commercial advertising and promotion of MCB's products.

127.     Such actions deceive and are likely to continue to deceive and cause the public and apparel community actual and material confusion as to the source of the goods and the provenance of the TONY BOWLS trademark.

128.     Such actions occurred and continue to occur in interstate and international commerce.

129.     MCB, its officers, directors, shareholders and management were aware of the termination of the License Agreement and knew or should have known that such termination was lawful and proper.  As such, MCB's subsequent unlawful and egregious conduct, as described herein, can only be construed as intentional, willful and in bad faith with a purpose of causing harm to Bowls and degradation of the TONY BOWLS trademark.

130.     MCB's activities described herein have caused and are likely to cause competitive and commercial injury to Bowls.  Pursuant to the Lanham Act, Bowls is entitled to recover 1) an amount equal to three times MCB's profits from the sale of the relevant products, 2) any damages suffered by Bowls directly, and 3) attorney's fees and the costs of this action.

## COUNT IV
### [Equitable Relief: Accounting]

131.     Bowls incorporates the allegations set forth in paragraphs 1 through 119 hereof as if fully set forth herein at length.

132.     Section 3 the License Agreement imposes obligations on MCB to pay Bowls a Royalty, pursuant to the terms of the License Agreement, on a monthly basis within twenty-five (25) days of the end of the applicable month.

2620269 v3

133.     Section 4 of the License Agreement imposes obligations on MCB to give Bowls access to documents and records, including, but not limited to, Sales Reports (as that term is defined by the License Agreement.)

134.     Section 4 of the License Agreement imposes obligations on MCB to permit Bowls to inspect and audit such documents and records.

135.     Despite repeated demands, MCB has not met its obligations pursuant to Sections 3 and 4 of the License Agreement.

136.     Bowls is entitled to an accounting of all royalties MCB has been obligated to pay Bowls pursuant to Section 3 of the License Agreement as well as access to the documents and records for inspection and auditing as required by Section 4 of the License Agreement and as necessary to confirm compliance with Section 7.3 of the License Agreement.

### COUNT V
### [Damages: Unfair Competition]

137.     Bowls incorporates the allegations set forth in paragraphs 1 through 136 hereof as if fully set forth herein at length.

138.     MCB has engaged in deceptive practices that render competition unfair and violate the standard of commercial morality.

139.     MCB launched a website, "MonCheriProm," without the TONY BOWLS trademark name in the domain name, which constituted a radical departure from MCB's use, during the previous 10 years, of promoting his trade name through its use of the "TonyBowls.com" website.   Such conduct has unfairly mislead the public and diminished the TONY BOWLS trademarked brand in the commercial market.

140.     MCB has publicized, on its MonCheriBridals.com website, that "Mon Cheri also carries designs from other prom dress designers," even though Bowls has exclusively designed

30

prom dresses for MCB.  Such conduct has unfairly mislead the public and diminished the TONY BOWLS trademarked brand in the commercial market.

141.    MCB has directed visitors to the MonCheriBridals.com webpage, via hyperlink, to another webpage that displayed, in addition to TONY BOWLS trademarked prom dresses, formal dresses produced by MCB under other labels, even though those dresses were not prom dresses.  Such conduct unfairly mislead the public and diminished the TONY BOWLS trademarked brand in the commercial market.

142.    MCB has utilized, without Bowls' authorization, the Mon Cheri Prom brand name in various types of social media – including Twitter and Facebook – rather than using the TONY BOWLS brand name it previously used on social media (such as @tonybowlsdesigns, which was used on Twitter), and has frequently done so without the inclusion of TONY BOWLS in the account name, the TONY BOWLS trademark, and without even mentioning TONY BOWLS in its posts.  Such conduct has unfairly mislead the public and diminished the TONY BOWLS trademarked brand in the commercial market.

143.    MCB has stated on Instagram that Steven Roddy ("Roddy"), who had been hired by MCB to work on marketing the TONY BOWLS trademarked products, was now acting as brand manager of BOTH Bowls' brand name AND the Mon Cheri Bridals brand name.  Such conduct has unfairly diminished the TONY BOWLS trademarked brand in the commercial market.

144.    MCB has failed to use Bowls' License Marks when showing pictures of Bowls' dresses and designs in advertisements or on social media.  Such conduct has unfairly mislead the public and diminished the TONY BOWLS trademarked brand in the commercial market.

145.    MCB has failed to use Bowls' Licensed Marks in several posts by Roddy, MCB's agent, on social media.   In addition, MCB has failed, on Roddy's posts, to make the TONY BOWLS trademark the primary promotional focus.  Such conduct has unfairly diminished the TONY BOWLS trademarked brand in the commercial market.

146.    MCB has misstated the Licensed Mark by incorrectly listing Bowls' trade name on a Spring 2015 email blast.  MCB has also altered the font size in another email blast layout. Such conduct has unfairly diminished the TONY BOWLS trademarked brand in the commercial market.

147.    Such deceptive conduct by MCB, violates the essence of fair play.

**WHEREFORE**, Bowls demands that this Court enter judgment against MCB and in favor of Bowls as follows:

a.      Dismiss the Amended Complaint in its entirety;

b.      Deny any extension of temporary restraining order against Bowls;

c.      Deny any other injunctive relief against Bowls;

d.      Award damages resulting from MCB's breach of the License Agreement;

e.      Award damages in an amount to be proved at trial for MCB's breach of the JFW License and Marketing Agreement;

f.      Award compensatory and treble damages for MCB's violation of the Lanham Act;

g.      Order an accounting of the Royalty MCB owed to Bowls during the term of the License Agreement;

h.      Order MCB to provide Bowls with access to documents and records pursuant to the terms of Sections 4.1 and 4.2 of the License Agreement;

i.      Order MCB to permit Bowls to conduct an inspection and audit of such documents and records pursuant to the terms of Section 4.3 of the License Agreement;

j.      Award Bowls attorneys' fees and costs; and

k.      Grant such other and different relief to Bowls which the Court may deem just and proper.

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
*Attorneys for Defendant Tony Bowls*


By:   /s/ David I. Rosen
          David I. Rosen

Dated:  April 20, 2015

33

2620269 v3

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I caused to be served, a true and correct copy of the foregoing Defendant's Answer to First Amended Complaint and Amended Counterclaims; and this Certificate of Service by electronic filing and FedEx overnight delivery upon the following counsel of record:

Craig S. Hilliard, Esq.
Stark & Stark, P.C.
993 Lenox Drive, Bldg. 2
Lawrenceville, NJ  08648-2389
*Attorneys for Plaintiff, Mon Cheri Bridals, LLC*

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

By:   /s/ David I. Rosen
David I. Rosen

Dated:  April 20, 2015

34